FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAR -1 A 10:50
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JACOB ASHER PLOWRIGHT, )
)
Petitioner, )
)
v. ) CV 111-065
) (Formerly CR 107-167)
UNITED STATES OF AMERICA, )
)
Respondent. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate confined to federal custody at FCI Estill, in Estill, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is currently before the Court on Respondent's motion to dismiss the instant § 2255 case. (Doc. no. 4.) Upon prompting by the Court (doc. no. 6), Petitioner has filed a response opposing Respondent's motion. (Doc. no. 7.) For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 4), that the instant § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

### I. BACKGROUND

On December 13, 2007, a federal grand jury returned a twenty-count indictment against six individuals for violations of criminal law; Petitioner was named in ten of those counts.[1] United States v. Plowright, CR 107-167, doc. no. 61 (S.D. Ga. Dec. 13, 2007) (hereinafter

---

[1] Petitioner was initially named in a November 13, 2007 criminal complaint alleging that Petitioner and his co-defendants committed a series of armed robberies, carjackings, and various firearms offenses in and around Augusta, Georgia between approximately October 6, 2006 and May 21, 2007. (Doc. no. 1.)

"CR 107-167"). Count 3 charged Petitioner with knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Id. at 4. Count 7 charged Petitioner with knowingly using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Id. at 7. The remaining eight counts against Petitioner charged him with conspiracy to use firearms during crimes of violence, armed robberies of commercial businesses, possession of stolen firearms, possession of an unregistered firearm, and possession and sale of a stolen motor vehicle. See generally id.

Petitioner pleaded guilty to Counts 3 and 7 – brandishing and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) pursuant to a written plea agreement with the government. Id., doc. no. 158. In return, the government agreed to dismiss the eight remaining counts against Petitioner. Id. at 3. The plea agreement specifically stated that upon a first conviction under 18 U.S.C. § 924(c), Petitioner's penalty would be "[n]ot less than 5 years of incarceration if possessed, 7 years if brandished, and 10 years if discharged (consecutive to any other sentence imposed)." Id. at 2. Further, upon a second or subsequent conviction under § 924(c), Petitioner's penalty would be "[n]ot less than 25 years of incarceration (consecutive to any other sentence imposed)." Id. The plea agreement additionally provided that the sentencing court, "while not bound to apply the federal sentencing guidelines, must consult those guidelines and take them into account to formulate a reasonable sentence." Id. at 7. The plea agreement also stated that the sentencing court was not a party to the plea agreement and that the government's recommendations under the agreement were therefore not binding on the court, leaving it "free to impose any sentence authorized by law up to the statutory maximum sentence." Id. at 9. Moreover, the plea

2

agreement provided,

> The defendant advises the Court that the defendant understands that if the relevant conduct, guideline sentencing range, or sentence imposed by the Court is more or greater than the defendant expected or, in the case of relevant conduct, is found to be more extensive than the defendant has admitted to, the defendant will still have no absolute right to withdraw his guilty plea.

Id. at 9-10.

At Petitioner's change of plea (Rule 11) hearing held on March 18, 2008, the Honorable Dudley H. Bowen, Jr., United States District Judge, summarized the terms of the plea agreement and read the two counts to which Petitioner was pleading guilty. Id., doc. no. 242, pp. 4-7. Judge Bowen reviewed the mandatory minimum sentence associated with each count, explained that the sentences must be served consecutively, and explained that Petitioner faced a maximum penalty of life imprisonment on each count. Id. at 8. Judge Bowen emphasized the seriousness of such punishment and asked Petitioner whether he understood, to which Petitioner responded, "Yes, sir." Id. at 8-9.

Judge Bowen also informed Petitioner in detail that he would be waiving a number of other rights by pleading guilty. Id. at 10-12. Additionally, Judge Bowen explained the role of the United States Sentencing Guidelines ("U.S.S.G."), emphasizing that they were only advisory and not binding on the District Court. Id. at 12. When Judge Bowen asked Petitioner whether anyone had required or forced him to plead guilty, Petitioner responded, "No, sir." Id. Judge Bowen also asked Petitioner whether he was satisfied with the representation of his lawyer, D. Wright McLeod, Esquire, to which Petitioner replied, "Yes, sir." Id. at 4. Furthermore, in response to Judge Bowen's questions, Petitioner averred that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 14. Following testimony as to the factual basis for the plea by Richmond County Sheriff's

Department Investigator Dan Carrier, Judge Bowen accepted Petitioner's guilty plea. Id. at 14-27.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI explained that Count 3 carried a mandatory minimum term of imprisonment of not less than 7 years and a maximum life sentence pursuant to § 924(c)(1)(A)(ii). PSI ¶ 59. Further, because Count 7 constituted a second conviction under § 924(c), the mandatory minimum term of imprisonment on that count was not less than 25 years and a maximum life sentence, consecutive to any other sentence imposed, pursuant to § 924(c)(1)(C)(i) and § 924(c)(1)(D)(ii). Id. The PSI also provided:

> Pursuant to U.S.S.G. § 2K2.4(b), if the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C. § 924(c), the guideline term of imprisonment is the minimum term required by statute. Therefore, the guideline term of imprisonment is 84 months as to Count 3, and 300 months as to Count 7, to be served consecutively, for a total imprisonment term of 384 months.

PSI ¶ 60; see also id. ¶ 26 (summarizing offense level computations pursuant to U.S.S.G. § 2K2.4(b)). Petitioner did not object to the PSI. Id., addendum.

On October 14, 2008, Judge Bowen adopted the factual statements in the PSI as the District Court's findings of fact. CR 107-167, doc. no. 222, p. 51. Judge Bowen sentenced Petitioner to 84 months of imprisonment with respect to Count 3 and 300 months of imprisonment with respect to Count 7, to be served consecutively for a total of 384 months. Id. at 72-73. Petitioner did not object to the findings of fact, conclusions of law, or the manner in which the sentence was imposed. Id. at 51, 77-78. A judgment was entered, following which Petitioner filed a direct appeal. Id., doc. nos. 198, 202.

Petitioner's trial attorney, Mr. McLeod, filed a brief pursuant to Anders v.

California, 386 U.S. 738 (1967), seeking to withdraw because he asserted that the appeal was without merit. (Doc. no. 1-1, pp. 18-26.) Petitioner filed a *pro se* appellate brief (see id. at 1-16, 30-31), although he had appellate counsel appointed for him. CR 107-167, doc. no. 249. On appeal, Petitioner argued that his guilty plea was not knowing and voluntary because he was misled into believing that he would be eligible for a sentence reduction if he demonstrated acceptance of responsibility. United States v. Plowright, 396 F. App'x 588, 589 (11th Cir. 2010) (*per curiam*).

> The Court of Appeals began by noting that Petitioner:
>
> faced a mandatory minimum prison term of 7 years on the first § 924(c) count for brandishing a firearm, and a consecutive mandatory minimum term of 25 years on the second count, for a total of 32 years. He was informed of this at least five times: when the government filed its certification of penalty along with the indictment; in the plea agreement; at the plea colloquy; in the presentence report; and again at sentencing.

Id. (citations omitted). The Court of Appeals further noted that any misconception regarding Petitioner's eligibility for a reduced sentence for acceptance of responsibility was cleared up by the PSI, which clearly provided that such an adjustment was inapplicable. Id. The Eleventh Circuit further stated that even if Petitioner's lack of objection to the PSI were not dispositive, he "failed to establish a reasonable probability that he would not have pleaded guilty had he been properly informed," because "[n]othing in the record suggests [he] would have turned down the plea deal" if he had know he was ineligible for a reduction in sentence based on acceptance of responsibility. Id. at 590.

> The evidence against him – which would have included testimony from at least two co-defendants that [Petitioner] had participated in the robberies and had admitted shooting the store clerk; surveillance video of [Petitioner] selling the same gun used in the shooting to an undercover officer several weeks later; and traffic video of [Petitioner] leading police on a high-speed chase through a residential neighborhood and a school parking lot – was such that he would

have been ill-advised to take his chances with a jury. [Petitioner's] sentence, severe as it was, could have been worse.[2]

Id. The Eleventh Circuit affirmed Petitioner's convictions. Id.

### B. Issues Raised in § 2255 Motion

Petitioner then timely filed his § 2255 motion, in which he raises the following grounds for relief: (1) that the District Court erroneously sentenced him as a "repeat offender" under § 924(c) because he had never been convicted prior to his underlying criminal proceedings; and (2) his counsel was ineffective for advising Petitioner to accept the government's plea offer to avoid the possibility of a life sentence, even though counsel knew that the two § 924(c) convictions "were enough to get him an [equivalent] sentence."[3,4] (Doc. no. 1, pp. 4-5, 7.) Respondent contends that the District Court correctly ruled that Petitioner's

---

[2]In this regard, the Court of Appeals noted that Petitioner benefitted from the plea deal "in two important ways": (1) in return for his guilty plea, the government dropped eight other counts, which would have resulted in an additional consecutive sentence of 121-151 months if Petitioner had been convicted on those counts (see 18 U.S.C. § 924(c)(1)(D)(ii)); and (2) Petitioner faced a maximum sentence of life imprisonment on each of his § 924(c) counts, and had he not demonstrated acceptance of responsibility, "[t]he district court could have varied upward and imposed a more severe sentence than it did." Plowright, 396 F. App'x at 590 n.2.

[3]Petitioner raises claims of ineffective assistance of counsel in both grounds one and two of his motion, and he argues that the District Court erroneously sentenced him as a "repeat offender" in both grounds one and three of his motion. For clarity, the Court proceeds to address Petitioner's various claims as two separate grounds for relief, and will refer to Petitioner's claims relating to his sentencing as "Ground One" and his claims relating to ineffective assistance of counsel as "Ground Two."

[4]Petitioner has attached to his § 2255 motion what Respondent explains is "an almost verbatim copy" (doc. no. 4, p. 9) of the *pro se* appellate brief from his direct appeal. (Doc. no. 1-1, pp. 1-16, 30-31.) Petitioner's § 2255 motion only refers to that document as containing more elaborate arguments on the grounds raised in his motion, rather than raising any additional claims. (Doc. no. 1, pp. 4-5, 7.) Notably, Petitioner was provided additional space in his § 2255 motion to raise other grounds for relief, but did not raise any additional grounds. (Id. at 8-10.) Thus, the Court limits its review of Petitioner's appellate brief to only those claims specifically raised in his § 2255 motion.

6

guilty plea resulted in two convictions under § 924(c) and that he was properly sentenced to an enhanced penalty for his second conviction. (Doc. no. 4, pp. 10-11.) Respondent further contends that Petitioner has failed to show that Mr. McLeod committed professional error or that Petitioner suffered prejudice from any alleged error. (Id. at 12-15.) Petitioner opposes the motion to dismiss. (Doc. no. 7.) The Court resolves these matters as follows.

## II. DISCUSSION

### A. Evidentiary Hearing Not Required

The Court recognizes that in the Eleventh Circuit, the general rule is "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp. 2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are affirmatively contradicted by the record or otherwise fail as a matter of law, and therefore no evidentiary hearing is necessary in this case.

### B. The District Court Correctly Sentenced Petitioner Under § 924(c)

Petitioner argues that under the terms of 18 U.S.C. § 924(c), only repeat offenders are subject to enhanced penalties under the statute. (Doc. no. 1, p. 7; doc. no. 1-1, pp. 9, 13-14;

7

doc. no. 7, pp. 1-3.) Specifically, Petitioner points to the text of § 924(c)(1)(C)(i), which provides, "In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years." (Doc. no. 1, p. 7; doc. no. 7, pp. 1-3.) Petitioner argues that because he had never before been convicted of any crime prior to his underlying criminal case, he was not a repeat offender and therefore could not be not be convicted of a "second or subsequent conviction" under § 924(c) in one proceeding. (Doc. no. 1-1, p. 14; doc. no. 7, p. 3.) However, this is not what § 924(c) requires.

18 U.S.C. § 924(c)(1)(A) provides that "[e]xcept to the extent that a *greater* minimum sentence is otherwise provided by this subsection . . . any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be sentenced to a term of imprisonment of not less than 5 years if possessed, 7 years if brandished, or 10 years if discharged. Id. (emphasis added). "In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years." Id. § 924(c)(1)(C)(i). Further, multiple terms of imprisonment imposed under the statute may not run concurrently, but instead must run consecutively.[5] Id. § 924(c)(1)(D)(ii).

As Respondent correctly points out (doc. no. 4, p. 11), the Supreme Court has squarely foreclosed Petitioner's argument that the enhanced penalties under § 924(c)(1)(C)(i) are only applicable to violations of § 924(c) committed after a previous conviction under § 924(c) has become final. In Deal v. United States, 508 U.S. 129, 133 n.1 & 135 (1993), the Supreme Court held that "findings of guilt on several counts are necessarily arrived at successively in

---

[5]The statute provides for exceptions to this general rule, which are not applicable here. See 18 U.S.C. § 924(c)(1)(D).

8

time," and thus a "second or subsequent conviction" under § 924(c)(1) does not require a criminal act after the first conviction. "What it requires is a *conviction* after the first conviction." Id. at 135 (emphasis in original). Stated another way, § 924(c) does not require that a previous sentence become final prior to commission of a second or subsequent offense in order for an enhanced sentence to be imposed for that second or subsequent offense. Id. at 134; see United States v. Hughes, 410 F. App'x 285, 287 (11th Cir. 2011) (*per curiam*) ("[Multiple convictions in the same prosecution were 'second or subsequent' under § 924(c), and warranted consecutive sentences.").

Thus, contrary to Petitioner's assertion, there is simply no requirement that he first be found to be a "repeat offender" before he can be subject to an enhanced 25-year penalty under § 924(c)(1)(C)(i). As Petitioner pleaded guilty to two counts of using a firearm during a crime of violence, this amounted to two separate convictions under § 924(c)(1)(C)(i), rendering the enhanced 25-year penalty applicable to Petitioner. Thus, the District Court correctly sentenced Petitioner to consecutive sentences of 7 and 25 years (84 months and 300 months, respectively) under 18 U.S.C. § 924(c). Accordingly, Petitioner is not entitled to relief on Ground One of his § 2255 motion.

### C. Petitioner's Guilty Plea

Petitioner next argues that Mr. McLeod was ineffective for advising him to plead guilty to escape the possibility of a life sentence, even though Mr. McLeod knew that two convictions under § 924(c) would result in an equivalent sentence. (Doc. no. 1, p. 5; doc. no. 1-1, p. 10.) Respondent argues that in light of the considerable evidence against Petitioner, Mr. McLeod did not commit professional error by advising him to plead guilty, and further that Petitioner fails to show prejudice from any alleged error in representation. (Doc. no. 4, p. 14.)

Respondent has the better argument.

1. **No Ineffectiveness of Counsel**

In addressing Petitioner's ineffective assistance of counsel claim, the Court begins with the proposition that this claim is not procedurally barred because it was not raised on direct appeal. Indeed, ineffective assistance of counsel claims may be raised for the first time in collateral proceedings. Massaro v. United States, 538 U.S. 500, 509 (2003). However, such claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which is not a favorable standard to Petitioner. Massaro, 538 U.S. at 505. First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, Petitioner has failed to convince the Court that he suffered prejudice from Mr. McLeod's assistance. As the Eleventh Circuit noted, the evidence against Petitioner was such "that he would have been *ill advised* to take his chances with a jury." Plowright, 396 F. App'x

at 590 (emphasis added). Further, contrary to Petitioner's assertion (doc. no. 1, p. 5), his two convictions under § 924(c) did *not* result in a term of imprisonment equivalent to that of a life sentence. While severe, Petitioner's 384-month sentence could indeed have been much worse. The Court notes, and as the Court of Appeals recognized, Petitioner benefitted from pleading guilty because he faced a possible life sentence for *each* of his § 924(c) counts. Id. at 590 n.2. Moreover, in exchange for his guilty plea, the government dropped eight of Petitioner's remaining counts, which carried with them the possibility of an additional consecutive sentence of 121 to 151 months. Id.

Notably, Petitioner does not allege that he would have declined the government's plea offer but for Mr. McLeod's advice. See Diaz v. United States, 930 F. 2d 832, 835 (11th Cir. 1991) (finding that petitioner's failure to allege that he would have accepted a plea offer as further support that he failed to show a reasonable probability that, absent his counsel's alleged error in advising against the plea offer, the result of his proceeding would be different). Indeed, although Petitioner asserts that Mr. McLeod knew about the severe penalties associated with two convictions under § 924(c) – suggesting that Mr. McLeod somehow failed to convey this possibility to him (see doc. no. 1, p. 5) – the record reflects that Petitioner was made abundantly aware of the seriousness of these penalties. See CR 107-167, doc. no. 158, p. 2; doc. no. 222, pp. 72-73; doc. no. 242, pp. 4-9; PSI ¶¶ 26, 59-60; see also Plowright, 396 F. App'x at 589.

The Court also notes Petitioner's claim that Mr. McLeod "was so deficient during pre-trial and appeal process [that] nothing that was relayed to the petitioner from him was 'effective[.]' [E]ven the appeals court had to ORDER counsel to cite a case to support the Anders Brief before he could withdraw." (Doc. no. 1, p. 4.) This vague allegation is made in

a conclusory fashion, and Petitioner makes no attempt in his § 2255 motion to explain how such a generalized deficiency prejudiced him, and he alleges no specific facts in support of this claim. For this reason alone, this claim must fail. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that claims consisting of "conclusory allegations unsupported by specifics" are subject to dismissal).

### D. Petitioner's Guilty Plea Was Knowing and Voluntary

Finally, although Petitioner has not alleged that his guilty plea was not knowing and voluntary, he has raised this issue by arguing that Mr. McLeod provided ineffective assistance in advising him to take the government's plea offer to avoid a possible life sentence. The Court notes that, on appeal, the Eleventh Circuit found that Petitioner's guilty plea was knowing and voluntary despite his assertion that he believed he was eligible for a sentence reduction for demonstrating acceptance of responsibility. Plowright, 396 F. App'x at 590. However, because the issue of whether Petitioner's guilty plea was knowing and voluntary arises in connection with his claim that his counsel was ineffective for advising him to plead guilty, the Court will, in an abundance of caution, address the issue here.

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea
> of guilty be knowingly and voluntarily entered because it involves a waiver of

13

a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, as noted above, Petitioner has not argued that his guilty plea was not knowing or voluntary. Moreover, the extensive plea colloquy conducted by Judge Bowen addresses each of the aforementioned "core principles." Id. at 1019. Judge Bowen questioned Petitioner

14

whether anyone had required or forced him to plead guilty, and Petitioner responded, "No, sir." CR 107-167, doc. no. 242, p.12. Judge Bowen informed Petitioner in clear terms the mandatory minimum sentence associated with each § 924(c) count, explained that the sentences must be served consecutively, and that Petitioner faced a maximum penalty of life imprisonment on each count; Petitioner testified that he understood the charges and the maximum penalties that might be imposed. Id. at 4-9. Judge Bowen also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 10-12. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 14. Moreover, Petitioner testified under oath that he was satisfied with Mr. McLeod's representation. Id. at 4.

In short, Judge Bowen's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. Furthermore, as explained above, Petitioner has not alleged, much less shown a reasonable probability, that he would not have pleaded guilty but for Mr. McLeod's advice that he should accept the government's plea offer. See id. at 1020 (rejecting challenge to entry of guilty plea where defendant did not attempt to carry his burden of showing that, but for the alleged error, he would not have entered his guilty plea). Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

As Petitioner has failed to show any prejudice resulting from Mr. McLeod's advising him to plead guilty, see Wainwright, 777 F.2d at 616, the Court accordingly finds that Petitioner is not entitled to relief on Ground Two in his § 2255 motion.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED** (doc. no. 4), that the instant § 2255 motion be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 1st day of March, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE